UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT JOHN STOCKTON, JR.,

Petitioner,

v.

RON BARNES, Warden,[1]

Respondent.

No. 2:13-cv-2413 KJM KJN P

FINDINGS & RECOMMENDATIONS

I. Introduction

Petitioner is a state prisoner, proceeding without counsel and in forma pauperis. Petitioner filed an application for petition of writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court is respondent's motion to dismiss the habeas petition as barred by the statute of limitations. For the reasons set forth below, respondent's motion should be granted.

II. Legal Standards

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court. . . ." Id. The Court of Appeals for the Ninth

---

[1] The current warden of Pelican Bay State Prison is Ron Barnes, who is substituted as respondent in this matter. Fed. R. Civ. P. 25(d); see Brittingham v. United States, 982 F.2d 378, 379 (9th Cir. 1992).

1

Circuit has referred to a respondent's motion to dismiss as a request for the court to dismiss under Rule 4 of the Rules Governing § 2254 Cases.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (1991).  Accordingly, the court will review respondent's motion to dismiss pursuant to its authority under Rule 4.

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted.  Section 2244(d)(1) of Title 8 of the United States Code provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Section 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period.  28 U.S.C. § 2244(d)(2).

Section 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period.  28 U.S.C. § 2244(d)(2).  Generally, this means that the statute of limitations is tolled during the time after a state habeas petition has been filed, but before a decision has been rendered.  Nedds v. Calderon, 678 F.3d 777, 780 (9th Cir. 2012).  However, "a California habeas petitioner who unreasonably delays in filing a state habeas petition is not entitled to the benefit of statutory tolling during the gap or interval

1   preceding the filing." Id. at 781 (citing Carey v. Saffold, 536 U.S. 214, 225-27 (2002)).

2   Furthermore, the AEDPA "statute of limitations is not tolled from the time a final decision is

3   issued on direct state appeal and the time the first state collateral challenge is filed because there

4   is no case 'pending' during that interval." Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999),

5   overruled on other grounds by Carey, 536 U.S. at 214.  Thus, "[t]he period between a California

6   lower court's denial of review and the filing of an original petition in a higher court is tolled --

7   because it is part of a single round of habeas relief -- so long as the filing is timely under

8   California law." Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir. 2010).  However, when, as here, a

9   petitioner has filed multiple state habeas petitions, "[o]nly the time period during which a round

10   of habeas review is pending tolls the statute of limitation; periods between different rounds of

11   collateral attack are not tolled."[2] Banjo, 614 F.3d at 968 (citation omitted).

12          Generally, a gap of 30 to 60 days between state petitions is considered a "reasonable time"

13   during which the statute of limitations is tolled, but six months is not reasonable.  Evans v.

14   Chavis, 546 U.S. 189, 210 (2006) (using 30 to 60 days as general measurement for

15   reasonableness based on other states' rules governing time to appeal to the state supreme court);

16   Carey, 536 U.S. at 219 (same); Waldrip v. Hall, 548 F.3d 729, 731 (9th Cir. 2008) (finding that

17   six months between successive filings was not a "reasonable time").

18          State habeas petitions filed after the one-year statute of limitations has expired do not

19   revive the statute of limitations and have no tolling effect.  Ferguson v. Palmateer, 321 F.3d 820,

20   ////

21

22   [2]  The Ninth Circuit has articulated a "two-part test to determine whether the period between the
     denial of one petition and the filing of a second petition should be tolled.  First, we ask whether

23   the petitioner's subsequent petitions are limited to an elaboration of the facts relating to the claims
     in the first petition.  If the petitions are not related, then the subsequent petition constitutes a new

24   round of collateral attack, and the time between them is not tolled.  If the successive petition was
     attempting to correct deficiencies of a prior petition, however, then the prisoner is still making

25   "proper use of state court procedures," and habeas review is still pending.  Second, if the
     successive petition was not timely filed, the period between the petitions is not tolled." Banjo,

26   614 F.3d at 968-69 (citations and internal quotation marks omitted).  In Hemmerle v. Schriro, 495

27   F.3d 1069, 1075 (9th Cir. 2007), the Ninth Circuit explained that "[i] the petition was denied on
     the merits, we will toll the time period between the two properly-filed petitions; if it was deemed

28   untimely, we will not." Id. at 1075.

1   823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that

2   has ended before the state petition was filed"); <u>Jiminez v. Rice</u>, 276 F.3d 478, 482 (9th Cir. 2001).

3   III.  <u>Chronology</u>

4           For purposes of the statute of limitations analysis, the relevant chronology of this case is

5   as follows:

6           1.  A jury convicted petitioner of first degree murder on June 1, 1995, and a sentencing

7   allegation was found true.  (Respondent's Lodged Document ("LD") 1.)

8           2.  On October 16, 1995, petitioner was sentenced to an indeterminate sentence of thirty

9   years to life in state prison.  (LD 1.)

10          3.  Petitioner filed an appeal, and on January 27, 1997, the California Court of Appeal,

11  Third Appellate District, affirmed the conviction.  (LD 2.)

12          4.  Petitioner filed a petition for review in the California Supreme Court, and on April 16,

13  1997, the petition was denied without comment.  (LD 4.)

14          5.  On March 19, 1997, [3] petitioner filed his first petition for writ of habeas corpus in the

15  Tehama County Superior Court.  (LD 5.)  On March 28, 1997, the Tehama County Superior

16  Court denied the petition in a reasoned decision.  (LD 6.)

17          6.  On July 1, 1997, petitioner filed a petition for writ of habeas corpus in the California

18  Court of Appeal for the Third Appellate District.  (LD 7.)  On July 10, 1997, the Court of Appeal

19  denied the petition without comment.  (LD 8.)

20          7.  On January 26, 1998, petitioner filed a petition for writ of habeas corpus in the

21  California Supreme Court.  (LD 9.)  On September 30, 1998, the California Supreme Court

22  denied the petition without comment.  (LD 10.)

23          8.  On December 5, 2011, petitioner filed a second petition for writ of habeas corpus in the

24  Tehama County Superior Court.  (LD 11.)  The superior court denied the petition on March 2,

25  2012, in a reasoned decision.  (LD 12.)

26

27  [3]  All of petitioner's state court filings were given benefit of the mailbox rule.  <u>See</u> <u>Campbell v.</u>
    <u>Henry</u>, 614 F.3d 1056, 1059 (9th Cir. 2010) (under the mailbox rule, the petition is deemed filed
28  when handed to prison authorities for mailing).

9. On August 30, 2012, petitioner filed a third petition for writ of habeas corpus in the Tehama County Superior Court. (LD 13.) On October 31, 2012, the superior court denied the petition in a reasoned decision. (LD 14.)

10. On February 7, 2013, petitioner filed a second petition for writ of habeas corpus in the in the California Court of Appeal for the Third Appellate District. (LD 15.) On March 7, 2013, the Court of Appeal denied the petition without comment. (LD 16.)

11. On June 3, 2013, petitioner filed a second petition for writ of habeas corpus in the California Supreme Court. (LD 17.) On July 31, 2013, the California Supreme Court denied the petition without comment. (LD 18.)

12. On November 6, 2013, petitioner filed the instant federal petition. <u>See</u> Rule 3(d) of the Federal Rules Governing Section 2254 Cases.

IV. <u>Statutory Tolling</u>

The California Supreme Court denied the petition for review on April 16, 1997. Petitioner's conviction became final ninety days later, on July 15, 1997, when the time for seeking certiorari with the United States Supreme Court expired. <u>Bowen v. Roe</u>, 188 F.3d 1157 (9th Cir. 1999). The AEDPA statute of limitations period began to run the following day, on July 16, 1997. <u>Patterson v. Stewart</u>, 251 F.3d 1243, 1246 (9th Cir. 2001). Absent tolling, petitioner's last day to file his federal petition was on July 16, 1998.

A. <u>No Tolling for First Two Habeas Petitions Filed in State Courts</u>

Petitioner's first two habeas petitions were filed on March 19, 1997, and July 1, 1997, before the statute of limitations period began to run on July 16, 1997. A collateral action filed prior to the effective date of the statute of limitations has no tolling consequence. <u>Waldrip</u>, 548 F.3d at 735 (noting that although the filing of a state habeas petition "would otherwise have tolled the running of the federal limitations period, since it was denied before that period had started to run, it had no effect on the timeliness of the ultimate federal filing."). Because petitioner's first two state court petitions were filed and concluded prior to the commencement of the statute of limitations, petitioner is not entitled to statutory tolling for the time such petitions were pending.

////

5

Moreover, once the statute of limitations began to run on July 16, 1997, petitioner waited until January 26, 1998, a period of 194 days, to file in the California Supreme Court. Petitioner's 194 day unexplained delay is considerably more than the unexplained delays of 101, 115 and 146 days found to be unreasonable by the Ninth Circuit in Chaffer and Banjo. Chaffer v. Prosper, 592 F.3d 1046, 1048 (9th Cir. 2010); Banjo, 614 F.3d at 970. More recently, the Ninth Circuit has found that interval delays of 81 days and 92 days between filings was unreasonable, Velasquez v. Kirkland, 639 F.3d 964, 968 (9th Cir. 2011), and even a 76 day delay was not reasonable, Livermore v. Sandor, 487 Fed. Appx. 342 (9th Cir. 2012). Because petitioner unreasonably delayed before filing in the California Supreme Court, petitioner is not entitled to tolling between the denial of his petition by the Court of Appeal. Thus, the statute of limitations period began running on July 16, 1997, and continued running until petitioner filed his petition in the California Supreme Court on January 26, 1998, 194 days later, leaving 171 days to file in federal court.

The limitations period was then tolled during the pendency of the petition in the California Supreme Court. On September 30, 1998, the California Supreme Court denied the petition, and the limitations period began running the next day, October 1, 1998. Thus, absent additional tolling, the limitations period expired on Sunday, March 21, 1999, and his federal petition was due no later than Monday, March 22, 1999. Petitioner did not file the instant petition until November 6, 2013, exceeding the limitations period by over fourteen and a half years.

B. No Tolling for Different Rounds of Collateral Review

"Only the time period during which a round of habeas review is pending tolls the statute of limitation; periods between different rounds of collateral attack are not tolled." Banjo, 614 F.3d at 968. However, petitioner's second round of habeas review may toll the limitations period if the claims were related and timely-brought. Banjo, 614 F.3d at 968-69

In petitioner's first round of collateral challenges, petitioner claimed that newly-discovered evidence, in the form of his co-defendant Jeremy Budden's[4] written confession, demonstrated that petitioner did not shoot the victim, did not share an intent to kill the victim, and

---

[4] Jeremy Budden's nickname was "Mojo," (Reporter's Transcript ("RT") 531), and parts of the record use "Mojo" rather than Budden. The undersigned uses the name Budden.

1  abandoned the crime scene before petitioner's co-defendant formed the intent to kill the victim.

2  (LD 9.)  In the second petition filed in the Tehama County Superior Court, petitioner again raised

3  his newly-discovered evidence claim based on the declaration by his co-defendant, but also added

4  a new witness declaration by Charles Hall, which petitioner claimed corroborated "imperative

5  portions of Jeremy Budden's confession declaration."  (LD 11 at 12 n.3.)

6         Both state court petitions pursued petitioner's actual innocence claim.  Thus, petitioner

7  meets the first prong of the <u>Banjo</u> exception.  Moreover, while the superior court found

8  petitioner's claim based on the declarations of counsel and Budden was successive to his 1997

9  petition, the court ruled on the merits of petitioner's 2011 claim concerning Hall's declaration.

10  (LD 12.)  The superior court did not find the 2011 petition untimely filed.  (LD 12.)

11         However, the state court's failure to address the timeliness of the petition does not end the

12  analysis.  <u>Banjo</u>, 614 F.3d at 970, citing <u>Evans</u>, 546 U.S. at 194, 197; <u>Carey</u>, 536 U.S. at 225-6.

13  Rather, the court must determine "whether California courts would have deemed the petition filed

14  within a reasonable time."  <u>Banjo</u>, 614 F.3d at 970.  Here, under <u>Evans</u>, California courts would

15  not have deemed the 2011 petition filed within a reasonable time.  The California Supreme Court

16  denied the petition on September 30, 1998; however, petitioner did not file his next petition in the

17  Tehama County Superior Court until December 5, 2011.  Petitioner's delay of over thirteen years

18  is not reasonable under <u>Evans</u>.[5]  Because the state court petition was not timely filed, petitioner is

19  not entitled to tolling for the time elapsed between rounds of collateral challenges in state court.

20  period.

21         C.  <u>Subsequent State Habeas Petitions</u>

22         Because the statute of limitations period had expired prior to the filing of petitioner's

23  additional petitions for habeas relief in state court, such petitions have no tolling effect.  State

24  _____

25  [5]  Witness Hall invoked the Fifth Amendment during petitioner's trial.  (ECF No. 15 at 3.)
Petitioner states that he learned, "in or about 2002," that Mr. Hall "tentatively agreed to give a

26  truthful account of his involvement and eye witness accounts of the events leading up to the
shooting of Todd Bates."  (ECF No. 15 at 3.)  Petitioner claims he attempted to reach Mr. Hall

27  with phone calls and letters, but was unsuccessful, and petitioner concedes that he "did not file a
habeas corpus petition under Mr. Hall's bare assertion absent a sworn declaration."  (ECF No. 15

28  at 4.)

1  habeas petitions filed after the one-year statute of limitations has expired cannot revive the statute

2  of limitations and have no tolling effect.  Ferguson, 321 F.3d at 823.

3  V.  Equitable Tolling

4          Equitable tolling is available to toll the one-year statute of limitations available to 28

5  U.S.C. § 2254 habeas corpus cases.  Holland v. Florida, 560 U.S. 631, 644 (2010).  A litigant

6  seeking equitable tolling must establish:  (1) that he has been pursuing his rights diligently; and

7  (2) that some extraordinary circumstance stood in his way.  Pace v. DiGuglielmo, 544 U.S. 408,

8  418 (2005).  The Ninth Circuit has explained:

> To apply the doctrine in "extraordinary circumstances" necessarily
> suggests the doctrine's rarity, and the requirement that extraordinary
> circumstances "stood in his way" suggests that an external force
> must cause the untimeliness, rather than, as we have said, merely
> "oversight, miscalculation or negligence on [the petitioner's] part,
> all of which would preclude the application of equitable tolling.

13  Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir.) (internal citation omitted), cert.

14  denied, 130 S. Ct. 244 (2009); see also Stillman v. LaMarque, 319 F.3d 1199, 1203 (9th Cir.

15  2003) (petitioner must show that the external force caused the untimeliness).  It is petitioner's

16  burden to demonstrate that he is entitled to equitable tolling.  Espinoza-Matthews v. People of the

17  State of California, 432 F.3d 1021, 1026 (9th Cir. 2005).

18          Here, petitioner does not specifically ask for, and he provides no basis for, the application

19  of equitable tolling.  Petitioner claims he was waiting until Hall provided a sworn declaration

20  before filing in federal court.  However, petitioner fails to demonstrate he pursued his rights

21  diligently.  The instant petition was filed over thirteen years after the limitations period expired.

22  On such a record, despite petitioner's difficulties in obtaining Hall's declaration, petitioner is not

23  entitled to equitable tolling.  Accordingly, the undersigned finds that petitioner has not met his

24  burden of demonstrating the existence of grounds for equitable tolling.  See Pace, 544 U.S. at 418

25  (petitioner bears burden of demonstrating grounds for equitable tolling); Espinoza–Matthews, 432

26  F.3d at 1026.

27  ////

28  ////

8

1    VI.   <u>Delayed Commencement</u>

2            Moreover, petitioner is not entitled to a delayed starting date of the limitations period

3    under 28 U.S.C. § 2244(d)(1)(D).  Under that subsection, the statute of limitations begins to run

4    when the "factual predicate" of petitioner's claims "could have been discovered through the

5    exercise of due diligence."  <u>Id.</u>  The term 'factual predicate' refers to the facts underlying the

6    claim, not the legal significance of those facts.  <u>Hasan v. Galaza</u>, 254 F.3d 1150, 1154 n.3 (9th

7    Cir. 2001) ("This is not to say that [petitioner] needed to understand the legal significance of

8    those facts -- rather than simply the facts themselves -- before the due diligence (and hence the

9    limitations) clock started ticking"); <u>accord</u> <u>Summers v. Patrick</u>, 535 F.Supp.2d 995 (C.D. Cal.

10   2008) ( "Under § 2244(d)(1)(D) AEDPA's statute of limitations commences when a petitioner

11   knows, or through the exercise of due diligence could discover, the factual predicate of her

12   claims, not when a petitioner learns the legal significance of those facts").  "[T]he petitioner bears

13   the burden of proving that he exercised due diligence, in order for the statute of limitations to

14   begin running from the date he discovered the factual predicate of the claim. . . ."  <u>DiCenzi v.</u>

15   <u>Rose</u>, 452 F.3d 465, 471 (6th Cir. 2006); <u>see also</u> <u>Majoy v. Roe</u>, 296 F.3d 770, 777 n.3 (9th Cir.

16   2002) (finding that petitioner "ha[d] not made an adequate showing of due diligence as required

17   by § 2244(d)(1)(D) to invoke this tolling provision.").

18           First, petitioner is not entitled to a later trigger date based on his co-defendant's statement,

19   because the declaration of Jeremy Budden was signed on January 15, 1996 (ECF No. 1 at 184),

20   prior to the resolution of petitioner's appeal on April 16, 1997, and over 17 years before petitioner

21   filed the instant action.  Because the record demonstrates that petitioner was long aware of the

22   facts supporting Budden's declaration, such declaration cannot provide a later starting point for

23   the limitations period.

24           Second, the factual predicate supporting Hall's declaration was also not new to petitioner,

25   as demonstrated by his December 7, 1994 letter to Hall, in which petitioner attempted to refresh

26   Hall's memory and persuade Hall to serve as a witness on petitioner's behalf.  (ECF No. 1 at 195-

27   96.)  Petitioner declares that he "did not know what would be 'incriminating' at that time."  (ECF

28   No. 15 at 25.)  However, petitioner's letter makes clear that petitioner was present with Hall at

1    Hall's apartment on September 7, 1994, the night of the murder.  Thus, petitioner was well aware

2    of the facts underlying the events of September 7, 1994, because petitioner was present with

3    Budden at Hall's apartment prior to the murder, and was engaged in conversations that Hall

4    allegedly overheard while at Hall's apartment.  Whether or not any of those facts were

5    "incriminating," is more akin to the legal significance of the facts rather than a lack of knowledge

6    of the facts themselves.  Because petitioner was aware of the factual predicate for Hall's

7    statement in 1994, petitioner is not entitled to a delayed start of the limitations period based on

8    Hall's declaration.

9         But even assuming, *arguendo*, that petitioner was not aware of the specific facts Hall

10   would include in his statement, and that petitioner was prevented from obtaining witness Hall's

11   declaration until September 17, 2011,[6] petitioner failed to meet the one year statute of limitations

12   deadline, as explained below.

13        Liberally construing the commencement of the limitations period to begin September 17,

14   2011, petitioner filed a petition in the Tehama County Superior Court addressing Hall's

15   declaration on December 5, 2011.  By December 5, 2011, 79 days of the limitations period had

16   expired.  Petitioner is not entitled to tolling for this first interval because petitioner had begun a

17   new round of collateral challenges.  Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003).  But

18   petitioner is entitled to tolling during the pendency of such petition, from December 5, 2011,

19   through March 2, 2012, when the superior court issued its decision.  The limitations period began

20   to run again on March 3, 2012, and petitioner had 286 days left to file his federal petition.  Absent

21   additional tolling, the limitations period expired on December 14, 2012.

22   ////

23

24   _____

25   [6]  As discussed in note 4, *infra*, petitioner states that he learned "in or about 2002," that Hall had
     "tentatively agreed to give a truthful account of his involvement and eye-witness accounts of the

26   events leading up to the shooting of Todd Bates," (ECF No. 15 at 3), but that his efforts to reach
     Hall by phone or letter were unsuccessful (ECF No. 15 at 4).  In 2011, petitioner received Hall's

27   declaration through the mail.  (Id.)  In his declaration, Mr. Hall states that petitioner tried to reach
     Hall, but Hall "refused to offer his statements."  (ECF No. 1 at 153.)

28

1    Petitioner's next state court filing, on August 30, 2012, was back in the superior court.[7]

2    Because petitioner did not proceed up the ladder to the next higher court, such filing does not toll

3    the limitations period.  Biggs, 339 F.3d at 1048 (application for post-conviction relief is pending

4    during the "intervals between a *lower* court decision and a filing of a new petition in a *higher*

5    court.")

6    Petitioner's next filing in a higher state court was on February 7, 2013, or 341 days after

7    the superior court issued its ruling.  As set forth above, under Evans, such delay is unreasonable.

8    But more importantly, by then, the one year statute of limitations period had expired on

9    November 26, 2012.  Thus, petitioner is not entitled to tolling for this 341 day period, and the

10   filing of the February 7, 2013 petition in the state court of appeals, as well as petitioner's

11   subsequent state court petitions, could not revive the statute of limitations period.

12   Petitioner did not file his federal petition until November 6, 2013, over eleven months

13   after the delayed statute of limitations period expired on November 26, 2012.  Thus, even if the

14   court were inclined to consider a delayed starting date based on Hall's declaration, which it is not,

15   the instant petition remains time-barred.

16   VII.  Actual Innocence

17   Petitioner claims that he is actually innocent of the crimes for which he was convicted,

18   and argues that it would be a fundamental miscarriage of justice for the court to dismiss the

19   petition as barred by the statute of limitations.  (ECF No. 15 at 1-2.)  Petitioner contends that his

20   co-defendant Budden's confession, "in forensically corroborated detail," demonstrates that it is

21   more likely than not that petitioner would not have been convicted as the shooter, and was made

22   against his own penal interest.  (ECF No. 15 at 13.)  In addition, petitioner argues that his new

23   evidence, the Hall declaration, proves that petitioner (a) used Mr. Hall's broken shotgun, and (b)

24   had no plan or intent to murder with it; and that Mr. Hall's testimony was against his penal

25   interest as evidenced by Hall invoking the Fifth Amendment during his testimony.  (ECF No. 15

26   at 13.)

27   _____

28   [7]  In this petition, petitioner raised claims of prosecutorial misconduct and ineffective assistance of counsel.  (LD 13.)

1    Respondent counters that Budden's declaration does not demonstrate that no juror, acting

2    reasonably, would have voted to find petitioner guilty beyond a reasonable doubt.  Respondent

3    argues that Hall's declaration, written by petitioner's uncle, similarly does not establish that

4    petitioner is actually innocent.  Rather, there was trial testimony that petitioner and Budden

5    discussed killing the victim with others before setting out to do so; Judith Bennett who

6    transported petitioner and Budden to the neighborhood where the killing occurred, testified that

7    petitioner admitted killing the victim shortly after she heard gunfire; Tasha Davis testified that

8    she saw a letter written by petitioner in which he admitted killing the victim Todd Bates, and that

9    Davis heard petitioner state that he killed Todd Bates; that petitioner's gun misfired so petitioner

10   took Budden's gun and shot Bates.  (ECF No. 12 at 11.)  Respondent argues that petitioner has

11   not provided sufficient evidence to demonstrate his actual innocence.

12       The U.S. Supreme Court has agreed with the Ninth Circuit that the "actual innocence"

13   exception applies to the AEDPA's statute of limitations.  See McQuiggin v. Perkins, 133 S. Ct.

14   1924 (2013); Lee v. Lampert, 653 F.3d 929, 934 (9th Cir. 2011) (en banc).  "[A] credible claim of

15   actual innocence constitutes an equitable exception to AEDPA's limitations period, and a

16   petitioner who makes such a showing may pass through the Schlup gateway and have his

17   otherwise time-barred claims heard on the merits."  Lee, 653 F.3d at 932, citing Schlup v. Delo,

18   513 U.S. 298 (1995).  Under Schlup, a petitioner must produce sufficient proof of his actual

19   innocence to bring him "within the 'narrow class of cases . . . implicating a fundamental

20   miscarriage of justice.' " 513 U.S. at 314-15 (quoting McCleskey v. Zant, 499 U.S. 467 (1991)).

21   Evidence of innocence must be "so strong that a court cannot have confidence in the outcome of

22   the trial unless the court is also satisfied that the trial was free of nonharmless constitutional

23   error." Schlup, 513 U.S. at 316.  To pass through the Schlup gateway, a "petitioner must show

24   that it is more likely than not that no reasonable juror would have convicted him in light of the

25   new evidence. . . ." Id. at 327.

26       Actual innocence in this context "means factual innocence, not mere legal insufficiency."

27   Bousley v. United States, 523 U.S. 614, 623-24 (1998); Jaramillo v. Stewart, 340 F.3d 877, 882-

28   83 (9th Cir. 2003) (accord).  To make a credible claim of actual innocence, petitioner must

12

1   produce "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy

2   eyewitness accounts, or critical physical evidence -- that was not presented at trial."  Schlup, 513

3   U.S. at 324.  The habeas court then considers all the evidence:  old and new, incriminating and

4   exculpatory, admissible at trial or not.  House v. Bell, 547 U.S. 518, 538 (2006).  On this

5   complete record, the court makes a "'probabilistic determination about what reasonable, properly

6   instructed jurors would do.'"  Id. (quoting Schlup, 513 U.S. at 329).  "The court's function is not

7   to make an independent factual determination about what likely occurred, but rather to assess the

8   likely impact of the evidence on reasonable jurors.  Id. (citing Schlup, 513 U.S. at 329.)

9           Here, petitioner produces two declarations that were not presented at the 1995 trial.

10          A.  Declaration of Jeremy Budden

11          On January 15, 1997,[8] Jeremy Budden, petitioner's co-defendant, signed a declaration as

12   to the events of September 7, 1994.  (ECF No. 1 at 180-84.)  In his declaration, Budden states that

13   he learned David Norris and others were arrested, and that Todd Bates had turned Norris in to the

14   police.  (ECF No. 1 at 180.)  Budden states that on September 7, 1994, he was at the apartment of

15   Santos, Hall, and Hutchison in Corning, California, where he saw petitioner and discussed where

16   to find Bates.  Budden denies discussing what they would do if they found Bates, but claims it

17   was Budden's intention to find Bates, confront him about Norris' arrest, and scare and beat up

18   Bates.  Budden saw petitioner get a shotgun that did not work, and Budden admits he was

19   carrying a working 9 mm. semiautomatic handgun.  Budden admits that Judy Bennett gave him

20   and petitioner a ride to a road near Bates' house, but that the only thing they discussed during the

21   ride was how to get there.  (ECF No. 1 at 181.)  Bennett remained in the car while Budden and

22   petitioner started walking, down the hill, past Angela Holcomb's house.  After further walking,

23   Todd Bates rode his bike past them.  Budden told Bates he wanted to talk to Bates, and Bates said

24   he would be back and rode out of sight.  Budden and petitioner turned around walked back to

25   _____

26   [8]  The Budden declaration bears the date January 15, 1996.  (ECF No. 1 at 184.)  However,
     petitioner's defense counsel, Eric Weaver, submitted a declaration in which he explains his efforts

27   in 1996 to contact Mr. Budden, including a visit on November 22, 1996, but that Mr. Budden
     signed the declaration on or about January 15, 1997, which Weaver received on or about January

28   28, 1997.  (ECF No. 1 at 177.)

1    Holcomb's driveway.  (ECF No. 1 at 182.)  At this point, Budden claims petitioner got fed up

2    trying to find Bates, that he was leaving, and walked off into the night toward Bennett's car.

3    Budden stopped to relieve himself and Bates appeared behind him, and then pedaled his bike in

4    front of Budden.  Bates got off the bike and offered Budden a cigarette.  Budden asked Bates

5    what happened at Norris' house.  Budden states that when he thought of Norris' arrest, he became

6    furious, saw red, pulled his gun and shot Bates three times at point blank range.  (ECF No. 1 at

7    182-83.)  After Bates fell to the ground, his bike landing on top of him, Budden walked up to

8    Bates and shot him three more times.  (ECF No. 1 at 183.)  Budden started to run for the car,

9    finding petitioner at the foot of the hill.  Budden claims they did not speak, but ran for the car.

10   After they got in the car, Budden claims that Judy Bennett drove away immediately, telling them

11   to get down.  As they drove away, Budden asked petitioner why he had done that, meaning why

12   he left Budden and stopped searching for Bates.  Budden states that petitioner told Budden he did

13   it because he wanted to.  Finally, Budden admits that he made statements to the police and to the

14   district attorney in which Budden claimed that petitioner actually shot Bates because Budden was

15   protecting himself in the hope that he would not be prosecuted for the killing of Todd Bates.

16   (ECF No. 1 at 184.)

17        B.   Declaration of Charles Hall

18        Hall identifies himself as petitioner's uncle.  (ECF No. 1 at 150.)  Hall states that he was

19   at his girlfriend's apartment complex on September 7, 1994, and that while petitioner and his

20   friend, Angela Holcomb were there, Hall learned that Todd Bates may have had something to do

21   with Dave Norris' arrest earlier in the day.  Petitioner left to find Budden, Wade Bennett and

22   Cindy Pruett came by, and when petitioner returned later, everyone was talking about Todd Bates

23   and Dave Norris.  Hall, petitioner and Budden went into the kitchen alone, and petitioner grabbed

24   an old busted shotgun and loaded it with a shell from the kitchen table.  Hall states that he

25   reminded petitioner that the gun was broken, and petitioner said he knew it was.  (ECF No. 1 at

26   151.)  Hall declares that he previously tried to fire the gun, but the firing pin would only dent the

27   bullet primer, rendering the gun harmless.  Hall denies that petitioner and Budden discussed

28   killing Bates.  Later on, Hall picked up petitioner and Budden and noticed something was wrong.

1  Hall drove them to Cindy Pruett's house, where Hall states Budden stated he had shot Todd

2  Bates.  (ECF No. 1 at 152.)  Hall states that he refused to testify at petitioner's trial because Hall

3  was afraid of being prosecuted.  (ECF No. 1 at 152-53.)

4       C.  Discussion

5       Petitioner has not provided evidence which demonstrates that he is factually innocent of

6  the crimes for which he was convicted.  First, the Hall declaration that the shotgun was inoperable

7  merely supports petitioner's trial testimony that the shotgun did not work.[9]  (Reporter's Transcript

8  ("RT") 1111-13.)  Hall's claim that petitioner told him petitioner left the scene prior to the murder

9  is self-serving, and to be viewed with suspicion given the family relationship.  In addition, the

10 fact that the shotgun did not work did not preclude the possibility that petitioner grabbed

11 Budden's gun and shot Bates, or that petitioner aided and abetted Budden in the murder.[10]

12      Second, Budden's declaration in large part tracks the testimony of petitioner at trial, with

13 the exception of petitioner's description of the verbal exchange while waiting for Bates to return:

14      Petitioner: "We're just gonna scare him, all right?"

15      Budden: "No, I'm gonna shoot him."

16      Petitioner:  Well, I'm gonna go wait up in the car then.

17 (RT 1133.)  The jury had benefit of petitioner's testimony concerning his claim that Budden was

18 ////

19

20 [9]  Under California Penal Code § 12022.53, subdivision (b), the phrase "uses a firearm,"
   encompasses the display of an unloaded or inoperable firearm.  Id.  A defendant "uses" a firearm

21 by intentionally displaying it in a menacing manner, firing it, or striking or hitting a human being
   with it.  People v. Grandy, 144 Cal. App.4th 33, 42, 50 Cal. Rptr. 3d 189 (Cal. App. 2 Dist. 2006)

22 (citations omitted).

23 [10]  "Under California law, a person who aids and abets the commission of a crime is a 'principal'

24 in the crime, and thus shares the guilt of the actual perpetrator."  People v. Prettyman, 14 Cal. 4th
   248, 259 (1996).  To prove that a defendant is an accomplice, "the prosecution must show that the

25 defendant acted 'with knowledge of the criminal purpose of the perpetrator and with an intent or
   purpose either of committing, or of encouraging or facilitating commission of, the offense.'"  Id.

26 (citation omitted).  "The mental state required for an aider and abettor is the same for all crimes
   and is independent of the perpetrator's mental state. The aider and abettor must specifically intend

27 to aid the perpetrator, whether the intended crime itself requires a general or specific intent on the
   part of the perpetrator."  People v. Mendoza, 18 Cal. 4th 1114, 1132 (1998).

28

1    the actual shooter.  Budden's testimony may have bolstered petitioner's testimony, but the jury

2    had other evidence to consider.

3           The Tehama County Superior Court noted such other evidence.  (LD 12.)  "Trial

4    testimony revealed that [petitioner] and Budden discussed killing the victim with others before

5    leaving to do so."  (LD 12 at 2.)  Judith Bennett testified that she remained in the car while

6    Budden and petitioner left; a few minutes later Bennett heard gunfire after which petitioner and

7    Budden ran to her car, excited[11] and sweating.  (LD 12 at 2.)  Bennett testified that Budden

8    complained that petitioner shot the victim, and asked him:  'What did you shoot him for?  It was

9    my thing;' and that [petitioner] replied:  'Because I wanted to, and it felt good. . . I got [sic], I

10   shot him in the guts, got him in the guts, he went down.'"  (LD 12 at 2; RT 658.)  Moreover,

11   Tasha Davis testified that she saw a letter written by petitioner in which he admitted killing the

12   victim Todd Bates, and that Davis heard petitioner state that he killed Todd Bates; that

13   petitioner's gun misfired so petitioner took Budden's gun and shot Bates.  (LD 12 at 2.)

14          Third, as the Tehama County Superior Court noted in its prior ruling on Budden's

15   declaration, issued March 28, 1997, the prosecution offered an alternative theory of guilt -- that

16   petitioner aided and abetted Budden:

17                 the [petitioner]'s own testimony, coupled with the circumstantial
                   evidence concerning the shotgun, and the prearranged pager pickup,
18                 as well as the nonaccomplice witnesses (Wade Bennett and
                   Bertrams) who testified that he encouraged Budden and conspired
19                 with Budden and Holcomb in an announced plan to shoot Bates
                   independently incriminated him as a principal in the murder,
20                 regardless who "actually" shot Bates.

21   (LD 6 at 2.)

22          Fourth, as noted by the Tehama County Superior Court, Budden's testimony contained in

23   his declaration would be subject to impeachment.  (LD 6 at 2.)  In his declaration, Budden now

24   claims that he only intended to scare and beat up Todd Bates, but that in a flash of anger he shot

25   and killed Bates.  However, the Tehama County Superior Court noted that in Budden's guilty plea

26   form:

27   _____

28   [11]  At trial, Bennett testified that Budden and petitioner were "waving their guns around," "totally
     excited," and "they were exhilarated."  (RT 657.)

1

2

3

4

5

6

> Budden stated that he was, in fact, guilty of willful, deliberate, and premeditated murder with malice aforethought. Budden's counsel, in a statement of factual support to the plea, stated that at the time [petitioner] and Budden left downtown Corning to locate Bates that 'Mr. Budden specifically had the intent to do bodily harm to Mr. Bates' and that [petitioner] shot Bates with the gun that Budden had in his possession. Budden, in response to the Court's questions, agreed that his counsel's statement was accurate. As an additional factual basis, the District Attorney stated facts that would support a finding that Budden was, in fact, the shooter.

7    (LD 6 at 3.) If Budden were to testify at a new trial for petitioner, Budden's testimony would be

8    subject to impeachment based on his prior statements that petitioner shot Todd Bates. Thus, just

9    as petitioner contends that the testimony of Judith Bennett and Tasha Davis were subject to

10   impeachment, so would the proposed testimony of Budden.

11   Finally, petitioner suggests that his sentence of thirty years to life is unconstitutional under

12   Miller v. Alabama, 132 S. Ct. 2455 (2012), because petitioner was a juvenile, placing him at a

13   severe disadvantage. (ECF No. 15 at 5.) In Miller, the Supreme Court held "the Eighth

14   Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole

15   for juvenile offenders." 132 S. Ct. at 2469. The Court did not hold that the Eighth Amendment

16   requires a categorical bar on life without parole for juveniles. Id. at 2466. Miller made clear that

17   a sentencing judge may still sentence a juvenile to life without parole in homicide cases, so long

18   as the sentencing judge "take [s] into account how children are different. . . ." Id. Here,

19   petitioner was not sentenced to life without the possibility of parole; rather, he received a

20   sentence of thirty years to life. Moreover, because of his first degree murder conviction, the

21   sentencing judge could have -- consistent with Miller and the United States Constitution --

22   imposed a sentence of life without the possibility of parole, so long as the judge considered how

23   children differ from adult offenders. Thus, petitioner's sentence is not unconstitutional under

24   Miller.

25   Therefore, while petitioner has pointed to evidence which supported his defense, that

26   evidence is not sufficient to make it more likely than not that no reasonable juror could convict

27   him of Bates' murder. Under Schlup, 513 U.S. at 298, petitioner must produce sufficient proof of

28   his actual innocence to demonstrate that a fundamental miscarriage of justice is implicated.

17

1   Petitioner has come forward with no evidence rebutting the strong evidence of his guilt which

2   included his interaction with Budden prior to the crime, and witness testimony as to his role in the

3   crime.  Petitioner has therefore failed to meet the exacting standard for passage through the actual

4   innocence procedural gateway.  Petitioner has not presented evidence so strong that the court does

5   not have confidence in the trial's outcome, or that it is more likely than not that no reasonable

6   juror would have convicted petitioner in light of the declarations of Budden and Hall.  Therefore,

7   petitioner is not entitled to pass through the <u>Schlup</u> gateway.

8   VIII.  <u>Conclusion</u>

9          For all of the reasons set forth above, petitioner's claims are barred by the statute of

10  limitations.

11         Accordingly, IT IS HEREBY RECOMMENDED that:

12         1.  Respondent's motion to dismiss (ECF No. 22) be granted; and

13         2.  This action be dismissed.

14         These findings and recommendations are submitted to the United States District Judge

15  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

16  after being served with these findings and recommendations, any party may file written

17  objections with the court and serve a copy on all parties.  Such a document should be captioned

18  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

19  he shall also address whether a certificate of appealability should issue and, if so, why and as to

20  which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

21  applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

22  § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after

23  service of the objections.  The parties are advised that failure to file objections within the

24  specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

25  F.2d 1153 (9th Cir. 1991).

26  Dated:  October 17, 2014

27                                              KENDALL J. NEWMAN
                                                UNITED STATES MAGISTRATE JUDGE

28  /stoc2413.mtd.hc.sol

18